**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Joseph Thompson,

Petitioner,

v.

B. Eischen, Warden,

Respondent.

Case No. 23-cv-2258 (NEB/TNL)

**REPORT & RECOMMENDATION**

---

Joseph Thompson, Reg. No. 46883-424, FPC-Duluth, P.O. Box 1000, Duluth, MN 55814 (pro se Petitioner);[1] and

Ana H. Voss and Lucas B. Draisey, Assistant United States Attorneys, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Respondent).

---

## I. INTRODUCTION

This matter comes before the Court on pro se Petitioner Joseph Thompson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See generally* Pet., ECF No. 1.

---

[1] As discussed further herein, Petitioner was transferred after the Petition was filed. Resp't Resp. to Pet'r Rebuttal, ECF No. 15 at 1; Decl. of Shannon Boldt ¶ 3, ECF No. 16; Ex. A to Boldt Decl., ECF No. 16-1 at 1. It also appears that Petitioner was released on December 1, 2023. *Find an inmate.*, Fed. Bureau of Prisons, http://www.bop.gov/inmateloc/. The only contact information on file for Petitioner is when he was confined at the federal prison camp located in Duluth, Minnesota ("FPC-Duluth"). It is therefore likely this Report & Recommendation will be returned to the Court as undeliverable. It is Petitioner's "responsibility to keep this Court properly apprised of his current address so that he may receive correspondence from this Court." *Jackson v. Brown*, No. 18-cv-2567 (WMW/LIB), 2020 WL 1236708, at *3 (D. Minn. Jan. 3, 2020), *report and recommendation adopted*, 2020 WL 1236562 (D. Minn. Mar. 13, 2020); *see also Hogquist v. Anoka Cty. Dist. Courts*, No. 19-cv-2471 (WMW/KMM), 2019 WL 6874709, at *1 n.1 (D. Minn. 17, 2019) ("It is a petitioner's responsibility to provide updated contact information to ensure timely receipt of case-related communications.").

Additionally, "[i]t has long been established that once a court acquires jurisdiction with the initial filing of a habeas corpus petition against a petitioner's immediate custodian, the subsequent transfer of the petitioner and accompanying change in custody does not divest the court of that jurisdiction." *Gianni v. Fed. Bureau of Prisons*, No. 09-cv-1166 (MJD/JSM), 2010 WL 1427318, at *5 n.6 (D. Minn. Feb. 12, 2010), *adopting report and recommendation*, 2010 WL 1427320 (D. Minn. Apr. 9, 2010), *aff'd*, 405 F. App'x 96 (8th Cir. 2010); *accord Griffin v. Ebbert*, 751 F.3d 288, 290 (5th Cir. 2014) ("Jurisdiction attached on that initial filing for habeas corpus relief, and it was not destroyed by the transfer of petitioner and accompanying custodial change." (citing cases)).

This matter has been referred to the undersigned for a report and recommendation to the district court, the Honorable Nancy E. Brasel, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Petition be **DENIED AS MOOT** and this matter be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

## II. BACKGROUND

Petitioner asserts that the BOP has not properly applied time credits earned under the First Step Act to his sentence.

### A. Time Credits Under the First Step Act

In brief, the First Step Act of 2018 ("First Step Act"), Pub. L. 115-391, 132 Stat. 5194 (2018), "offers prisoners an opportunity to earn [t]ime [c]redits applicable to their periods of residential reentry center placement, home confinement or supervised release, by participating in certain evidence-based recidivism reduction . . . programs and productive activities." *Salter v. Fikes*, No. 20-cv-2253 (ECT/ECW), 2021 WL 2365041, at *1 (D. Minn. May 5, 2021) (quotation omitted), *report and recommendation accepted*, 2021 WL 2354934 (D. Minn. June 9, 2021); *see also, e.g.*, *Mills v. Starr*, No. 21-cv-1335 (SRN/BRT), 2022 WL 4084178, at *1, 4 (D. Minn. Aug. 17, 2022), *report and recommendation adopted*, 2022 WL 4080750 (D. Minn. Sept. 6, 2022).

"Time credits earned . . . shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). "[A]n inmate is only eligible to have their time credits applied if they meet certain criteria under 18 U.S.C. § 3624(g)." *Mills*, 2022

WL 4084178, at *4. "That criteria includes having accumulated time credits in an amount that is equal to the remainder of [the inmate's] imposed term of imprisonment . . . ." *Id.*; *see also* 18 U.S.C. § 3624(g)(1)(A) (eligibility requirement that prisoner "has earned time credits . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment"); 28 C.F.R. § 523.44(b)(1) (time credits may be applied toward prerelease custody or early transfer to supervised release if eligible inmate has "[e]arned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment"). "In other words, the First Step Act provides that a prisoner is eligible to have earned time credits applied for supervised release or prelease custody only when []he has earned time credits that equal the remainder of h[is] sentence." *Mills*, 2022 WL 4084178, at *4; *see Adkins v. Engleman*, No. CV 22-1988 JLS (MRW), 2022 WL 14966123, at *2 (C.D. Cal. Sept. 8, 2022) ("Federal courts around the country read Section 3624(g)(1)(A) to mean that the BOP is permitted to apply time credits *only* once an inmate has earned enough that equal the remainder of her sentence." (quotation omitted)), *report and recommendation accepted*, 2022 WL 15116425 (C.D. Cal. Oct. 24, 2022).

Moreover, if the prisoner's sentence includes "a requirement that the prisoner be placed on a term of supervised release after imprisonment . . . , . . . the Bureau of Prisons [('BOP')] may transfer the prisoner to begin any such term of supervised release at an earlier date, *not to exceed 12 months*, based on the application of time credits." 18 U.S.C. § 3624(g)(3) (emphasis added); *see also* 28 C.F.R. § 523.44(d)(3) ("The application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred."). Thus,

"[e]arly transfer to supervised release effectively reduces an inmate's sentence by, at max, one year." *Mills*, 2022 WL 4084178, at *4; *see also, e.g.*, *Roberts v. Cox*, No. 4:20-CV-04187-KES, 2022 WL 742489, at *2 (D. S.D. Mar. 11, 2022) ("Further, the BOP cannot grant an inmate more than twelve months of supervised release for earned time credits under the First Step Act." (citing 18 U.S.C. § 3624(g)(3))).

**B. Effect of RDAP**

Under 18 U.S.C. § 3621(e)(2), "a federal prisoner's sentence may be reduced by up to one year, if—in the judgment of the BOP—he successfully completes residential substance abuse treatment." *Korf v. Rardin*, No. 23-cv-196 (JWB/DTS), 2023 WL 2899016, at *2 (D. Minn. Mar. 13, 2023) (citing 18 U.S.C. § 3621(e)(2)(A)-(B)), *report and recommendation accepted*, 2023 WL 2898631 (D. Minn. Apr. 11, 2023). The Residential Drug Abuse Program ("RDAP") consists of three components: (1) a unit-based component "in a treatment unit set apart from the general prison population," lasting "at least six months"; (2) follow-up services, time permitting, "between completion of the unit-based component of the RDAP and transfer to a community-based program"; and (3) community-treatment services. 28 C.F.R. § 550.53(a); *see also Psychology Treatment Programs*, BOP Program Statement 5330.11, CN-1, *available at* https://www.bop.gov/policy/progstat/5330.11.pdf. An inmate "must complete the [community treatment services] to have successfully completed RDAP and receive incentives." 28 C.F.R. § 550.53(a)(3); *see also* 28 C.F.R. § 550.56(a); *Psychology Treatment Programs*, BOP Program Statement 5330.11, CN-1. "If inmates refuse or fail to complete [community treatment services], they fail RDAP and are disqualified for any

additional incentives." 28 C.F.R. § 550.56(a); *see also Psychology Treatment Programs*, BOP Program Statement 5330.11, CN-1. To be eligible for § 3621(e)'s maximum one-year early release, an inmate must "[s]ucessfully complete . . . RDAP . . . during their current commitment." 28 C.F.R. § 550.55(a)(2); *see* 28 C.F.R. § 550.55(c)(1) ("Inmates so approved may receive early release up to twelve months prior to the expiration of the term of incarceration . . . .").

In order to receive the benefit of an early release under 18 U.S.C. § 3621(e) for successful completion of RDAP, Petitioner "had to complete a minimum of 120 days in community placement." Decl. of Nicole Finckler ¶ 11, ECF No. 11. "If inmates cannot fulfill their community-based treatment obligations by the presumptive release date, [the BOP] may adjust provisional release dates by the least amount of time necessary to allow inmates to fulfill their treatment obligations." 28 C.F.R. § 550.55(c)(3).

BOP Program Statement 5410.01, *First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)*, explains how RDAP and time credits earned under the First Step Act interact:

> An inmate must complete all required components of RDAP, including the community-based treatment component, in order to receive the early release benefit pursuant to 18 U.S.C. § 3621(e). The 3621(e) benefit will be applied first to the inmate's sentence computation, followed by the application of [First Step Act time credits], however, an inmate must have sufficient time remaining to serve to complete all required components of the RDAP program (i.e., 120-day community-based treatment).
>
> In the event an inmate has insufficient time remaining to serve after completing the RDAP program to receive both the early release benefit under 3621(e) and the full 365 days toward early release of earned [First Step Act time credits], the number of [First

> Step Act time credits] . . . applied will be reduced to allow for, at a minimum, the 120-day community-based placement as required under 3621(e).

BOP Program Statement 5330.11, CN-2, *available at* https://www.bop.gov/policy/progstat/5410.01_cn2.pdf; *see also* Ex. E to Finckler Decl., ECF No. 11-5 at 22.

**C. Petitioner's Sentence & Response**

Petitioner was sentenced to a 108-month term of imprisonment followed by five years of supervised release. Finckler Decl. ¶ 3; Ex. A to Finckler Decl., ECF No. 11-1 at 2. Petitioner initially had a projected release date in early December 2024 via good-conduct time. Ex. A to Finckler Decl., ECF No. 11-1 at 1, 2; *see* Finckler Decl. ¶ 12.

There is no dispute that, as of July 2023, Petitioner had earned the maximum 365 days of time credits under the First Step Act that may be credited towards an earlier transfer to supervised release. Pet'r Ex. 3, ECF No. 1-1 at 6; Finckler Decl. ¶ 10; Ex. B to Finckler Decl., ECF No. 11-2 at 1. There is also no dispute that Petitioner had more than 400 days of time credits under the First Step Act that could be credited towards pre-release placement in a residential reentry center or home confinement. Pet'r Ex. 3, ECF No. 1-1 at 6; Ex. B to Finckler Decl., ECF No. 11-2 at 1.

Petitioner was also participating in RDAP. Petitioner's anticipated completion of the unit-based component of RDAP was near the end of November 2023. Finckler Decl. ¶ 11. To account for the 120-day community-based component, Petitioner's projected release date was updated to approximately mid-March 2024. Finckler Decl. ¶ 11-12; *see* Pet'r Ex. 4, ECF No. 1-1 at 8. As compared to his December 2024 good-conduct release date, however, Petitioner would receive "[n]either the full benefit of his 365 days of [First

Step Act time credits] towards an early release [n]or the entire 1 year early release under § 3621(e)." Finckler Decl. ¶ 12. BOP "[s]taff counseled [Petitioner] to not withdraw from RDAP because he could be placed in 'opt-out' status and lose all of the [First Step Act time credits] he earned while enrolled in RDAP in addition to his § 3621(e) early release, meaning he would potentially remain in custody until . . . [early December 2024] . . . ." Finckler Decl. ¶ 13.

Petitioner filed the instant Petition at the end of July, requesting "immediate[] release" by means of placement in a residential reentry center or home confinement. Pet., ECF No. 1 at 3. "In light of the [P]etition, [BOP] staff sought clarification from [the] Central Office regarding the effect of [Petitioner's withdrawal] from RDAP on his [First Step Act time credits]." Finckler Decl. ¶ 14. BOP "[s]taff were advised [Petitioner] would not be placed into opt-out status," which "would only occur if [Petitioner] declined to reenroll in RDAP or [an]other drug abuse treatment program when asked to by staff." Finckler Decl. ¶ 14. BOP "[s]taff shared this information with [Petitioner], and he elected to withdraw from RDAP on August 14, 2023." Finckler Decl. ¶ 15. Once Petitioner withdrew from RDAP, he "forfeited his § 3621(e) early release date" and "[h]is projected release date was updated to December 3, 2023, with consideration of 365 days of [First Step Act time credits]." Finckler Decl. ¶ 16; Ex. A to Finckler Decl., ECF No. 11-1 at 2, 3.

In the meantime, in early August, BOP staff initiated a referral for community placement based on the additional First Step Act time credits Petitioner had earned towards pre-release placement in a residential reentry center or home confinement. Finckler Decl.

¶ 17; *see generally* Ex. F to Finckler Decl., ECF No. 11-6. BOP staff recommended a placement date of September 20, 2023, in Chicago, Illinois, which was approved. Finckler Decl. ¶¶ 17-18; Ex. F to Finckler Decl., ECF No.11-6 at 1.

In light of these subsequent events, Respondent requested that the Petition be dismissed as moot.

**D. Petitioner's Reply, Respondent's Surreply & Petitioner's Release**

Approximately one week after the response was filed, Petitioner filed a reply indicating that he had not yet "receive[d] a pre[-]release custody date" or begun "the process for release such as getting finger printing" or having travel arrangements made. Pet'r Reply, ECF No. 13 at 1. Petitioner asserted that he has "415 days towards pre[-]release [residential reentry center placement] or home confinement which [he] will never get a chance to use." Pet'r Reply, ECF No. 13 at 1. The Court ordered Respondent to respond to the reply. *See generally* ECF No. 14.

In the surreply, Respondent confirmed that Petitioner left FPC-Duluth on September 20, 2023 and arrived at the residential reentry center in Chicago, Illinois, the same day. Resp't Resp. to Pet'r Rebuttal, ECF No. 15 at 1; *see* Boldt Decl. ¶ 3; Ex. A to Boldt Decl., ECF No. 16-1 at 1. Respondent again asserted that this matter was moot and requested that it be dismissed.

Based on publicly available information through the BOP's website, it appears that Petitioner was subsequently released on December 1, 2023. *Find an inmate.*, Fed. Bureau of Prisons, http://www.bop.gov/inmateloc/.

## III. ANALYSIS

"Article III of the United States Constitution only allows federal courts to adjudicate actual, ongoing cases or controversies." *Potter v. Norwest Mortg., Inc.*, 329 F.3d 608, 611 (8th Cir. 2003); *see* U.S. Const. art. III, § 2. The case-or-controversy requirement exists at all stages of federal judicial proceedings. *Potter*, 329 F.3d at 611. It is of no consequence that a claim was live at an earlier stage in the proceedings; a claim must be live when the court decides the issue. *South Dakota v. Hazen*, 914 F.2d 147, 150 (8th Cir. 1990).

"The 'case or controversy' requirement is not met if 'the question sought to be adjudicated has been mooted by subsequent developments.'" *Roberts v. Norris*, 415 F.3d 816, 819 (8th Cir. 2005) (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)). "When, during the course of litigation, the issues presented in a case 'lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief,' the case is considered moot." *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000) (alteration in original) (quoting *Beck v. Mo. State High Sch. Activities Ass'n*, 18 F.3d 604, 605 (8th Cir. 1994)). If there is no longer an active case or controversy, the action is moot and must be dismissed. *Potter*, 329 F.3d at 611; *see Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005) ("If an issue is moot in the Article III sense, we have no discretion and must dismiss the action for lack of jurisdiction.").

In the Petition, Petitioner requested that his First Step Act time credits be applied and he be placed in a residential reentry center or on home confinement. The BOP has since done so. Earned time credits have been applied to Petitioner's sentence, which resulted in his placement at a residential reentry center and his subsequent release. "The

Court can no longer grant effective relief[ as Petitioner] ha[s] already received the relief he sought in the Petition." *Pritchard v. Marques*, No. 19-cv-1242 (WMW/BRT), 2019 WL 5023208, at *2 (D. Minn. Aug. 19, 2019), *report and recommendation adopted*, 2019 WL 4957905 (D. Minn. Oct. 8, 2019). Moreover, "[t]his case became moot when [Petitioner] was released from custody because the Court can no longer grant effective relief since []he is no longer in BOP custody." *Huey v. United States*, No. 20-cv-1538 (PAM/ECW), 2021 WL 1842283, at *2 (D. Minn. Apr. 19, 2021) (quotation omitted), *report and recommendation adopted sub nom. Huey v. Starr*, No. 20-cv-1538 (PAM/ECW), 2021 WL 1840027 (D. Minn. May 7, 2021); *see also, e.g.*, *Alvarado-Ortiz v. FPC Yankton*, No. 22-cv-206 (NEB/ECW), 2022 WL 4358112, at *2 (D. Minn. July 27, 2022) (habeas petition moot following release as petitioner was no longer in BOP custody), *report and recommendation accepted*, 2022 WL 4357544 (D. Minn. Sept. 20, 2022).

The Court next turns to whether any of the exceptions to the mootness doctrine are applicable in this case notwithstanding the BOP's application of Petitioner's First Step Act time credits, his transfer to a residential reentry center, and his subsequent release. *Sayonkon v. Beniecke*, No. 12-cv-27 (MJD/JJK), 2012 WL 1621149, at *2 (D. Minn. Apr. 17, 2012) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)), *report and recommendation adopted*, 2012 WL 1622545 (D. Minn. May 9, 2012); *see, e.g.*, *Jefferson v. Jett*, No. 15-cv-3308 (PJS/BRT), 2016 WL 4196824, at *2 n.1 (D. Minn. July 1, 2016), *report and recommendation adopted*, 2016 WL 4186943 (D. Minn. Aug. 8, 2016); *Buckles v. Wilson*, No. 14-cv-648 (JRT/HB), 2014 WL 5438495, at *4-5 (D. Minn. Oct. 22, 2014). A case should not be dismissed as moot if any of the following exceptions apply:

> (1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit.

*Sayonkon*, 2012 WL 1621149, at *2 (quotation omitted); *see also Ahmed v. Sessions*, No. 16-cv-2124 (DSD/HB), 2017 WL 3267738, at *3 (D. Minn. July 11, 2017), *report and recommendation adopted*, 2017 WL 3268176 (D. Minn. July 31, 2017). None of these exceptions apply here.

"First, there is no evidence of any cognizable collateral consequences that resulted from [Petitioner] not being released as early as he believed he should have been or related to his requested release." *Alvarado-Oritz*, 2022 WL 4358112, at *2; *accord Huey*, 2021 WL 1842283, at *2; *see also Scheper v. Rios*, No. 19-cv-402 (MJD/ECW), 2020 WL 4060729, at *3 (D. Minn. June 5, 2020), *report and recommendation adopted*, 2020 WL 4059875 (D. Minn. July 20, 2020).

Second, this case does not involve conduct that is capable of repetition yet evading review. This "exception applies if the matter is too short in duration to be fully litigated before it ends or expires and there is a reasonable expectation that [Petitioner] will be subjected to the same action again." *Huey*, 2021 WL 1842283, at *2 (alteration in original) (quoting *In re Search Warrants Issued in Connection with Investigation of S. Cent. Career Ctr., W. Plains, Mo.*, 487 F.3d 1190, 1193 (8th Cir. 2007)); *accord Alvarado-Ortiz*, 2022 WL 4358112, at *2. "[T]here is nothing remaining to litigate in this case, and there is no indication that Petitioner will be held in federal custody again." *Huey*, 2021 WL 1842283, at *2; *accord Alvarado-Ortiz*, 2022 WL 4358112, at *2. Moreover, should Petitioner be

taken back into custody, it would be based on a new set of facts and circumstances, such as violating the conditions of his supervision. If Petitioner were brought back into custody, he would be free to bring a new habeas petition based on such new facts and circumstances.

Third, there is no indication that the BOP placed Petitioner in a residential reentry center "simply to avoid judicial review of its prerelease determination or that it is free to reinitiate the challenged conduct once this case is dismissed." *Jefferson*, 2016 WL 4196824, at *2 n.1. Respondent has explained how BOP staff sought clarification regarding Petitioner's particular circumstances and the effect withdrawal from RDAP would have on his First Step Act time credits, providing insight into the timing of his placement. *See Scheper*, 2020 WL 4060729, at *3. "There is nothing in the record that suggests [Petitioner] was moved to . . . [a residential reentry center] only to preclude this Court's review." *Id.*

Fourth, this case was not brought on behalf of a class of individuals; the claims and relief sought only pertained to Petitioner individually. *See Ahmed*, 2017 WL 3267738, at *3 ("[T]his matter involves a request for relief by an individual detainee on his own behalf, not a request for relief on behalf of a class of individuals.").

Accordingly, the Court concludes that this matter is moot and must be dismissed for lack of jurisdiction. *See, e.g.*, *Alvarado-Ortiz*, 2022 WL 4358112, at *2; *Huey*, 2021 WL 1842283, at *2.

## IV. RECOMMENDATION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's petition for a writ of habeas corpus, ECF No. 1, be **DENIED AS MOOT**.

2. This matter be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

Date: January 2, 2024

*s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Thompson v. Eischen*
Case No. 23-cv-2258 (NEB/TNL)

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).